

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| TERRY L. WARREN, | ) | |
| | ) | |
| Appellant, | ) | WD86050 |
| | ) | |
| V. | ) | OPINION FILED: |
| | ) | APRIL 30, 2024 |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Henry County, Missouri**
The Honorable Michael Brandon Baker, Judge

Before Division Four:  Gary D. Witt, Chief Judge, Presiding, Karen King Mitchell, Judge
and Janet Sutton, Judge

Terry L. Warren ("Warren") appeals the judgment of the Circuit Court of Henry County, Missouri ("motion court"), denying, after an evidentiary hearing, his motion for post-conviction relief pursuant to Rule 29.15.[1]  On appeal, Warren argues that the motion court clearly erred in denying his motion for post-conviction relief because he established that his trial counsel ("Counsel")[2] was constitutionally ineffective in failing to submit a

---

[1] All rule references are to the Missouri Supreme Court Rules (2023), unless otherwise noted.
[2] Pursuant to section 509.520, we do not include the names of any witnesses other than parties.  All statutory references are to the Revised Statutes of Missouri (2016), as currently updated, unless otherwise noted.

self-defense instruction based on justification of using deadly force to protect himself from a forcible felony.  We affirm the judgment of the motion court.

## Factual and Procedural Background

On September 17, 2018, Warren got in an altercation with a man at a Casey's gas station about a dog.  Warren was angry, called the man some names and "kind of tried to push him," but the man, who was "a pretty good-size guy," "probably 6'4", probably 260 pounds," "didn't budge."  Warren left the Casey's and went to the home of his girlfriend ("Girlfriend"), where he lived also.  Warren was still angry, and when he entered the house he was "yelling and throwing stuff," and he punched two holes in the walls of the house.  Girlfriend, her two sons, and some of their friends were in the house at this time; they noticed that Warren had been drinking.  When Girlfriend came out into the living room and confronted Warren about punching holes in the walls, he told her to "shut the F up" and called her a "bitch."  He also hit Girlfriend in the face.  In response, Girlfriend's son ("Son") and one of his friends ("Victim") placed themselves between Girlfriend and Warren and began hitting Warren.

After the younger men stopped hitting Warren, he got to his feet, pulled out a knife that he always carried with him, and said, "[E]verybody is getting stabbed."  Warren did, in fact, stab Victim in the abdomen.  Victim started bleeding heavily, Girlfriend called 911, and Warren fled the house and went to a nearby parking lot where he was apprehended by police.  In the parking lot, Warren admitted to stabbing Victim but claimed that it was self-defense.  Warren had some injuries to his face and head from the blows from Son and Victim.

2

At trial, Victim, Girlfriend, Son, and one of Son's friends testified, as did two law enforcement officers and Warren himself. Warren testified that he had had a brain tumor in 2002 with a brain hemorrhage. Warren testified that he stabbed Victim while he was on the ground with Victim and while Warren was still being punched in the head. Warren was specifically concerned about the blows to his head due to his prior brain injury. Warren claimed that the stabbing was in self-defense, and a self-defense instruction was given to the jury. The jury, after fifteen minutes of deliberation, found Warren guilty. Warren's conviction was affirmed on appeal. *State v. Warren*, 628 S.W.3d 415 (Mo. App. E.D. 2021).

Warren filed a timely amended motion for post-conviction relief claiming, *inter alia*, that Counsel was ineffective for failing to request the trial court to submit to the jury a self-defense instruction under which the jury could find that Warren was justified in using deadly force to protect himself against the forcible felony of domestic assault in the second degree. At the evidentiary hearing, Counsel testified that he submitted the self-defense instruction that he did because he believed that the evidence showed that Warren was afraid for his life since he had a history of brain injury, and he was being "pummel[ed]" in the head. Counsel testified that he did not consider asking for the instruction for justification of protection against a forcible felony. He believed the forcible felony of domestic assault was already covered by the self-defense instruction that was submitted, which allowed for the use of deadly force if the defendant "reasonably believes that the use of deadly force is necessary to protect himself against death or serious physical injury." Counsel also testified that "someone talked to the jury .

3

. . and they basically said that you can't use self-defense if you're committing domestic assault.  Because apparently, they believed that Mr. Warren had struck [Girlfriend], although [he] testified he didn't."  The motion court denied Warren's motion.  This appeal follows.

## Standard of Review

A motion court's judgment overruling a motion for post-conviction relief is presumed correct.  *McLaughlin v. State*, 378 S.W.3d 328, 336-67 (Mo. banc 2012).  Appellate review of a denial of a Rule 29.15 motion is limited to determining whether the findings of fact and conclusions of law of the motion court are clearly erroneous.  Rule 29.15(k).  The motion court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, the appellate court is left with a definite and firm impression that a mistake has been made.  *State v. Ervin*, 835 S.W.2d 905, 928 (Mo. banc 1992).

## Analysis

Warren argues, in his single point relied on, that the motion court clearly erred in denying his amended motion because Counsel was ineffective in failing to request a self-defense instruction based on justification for the use of deadly force to protect himself from the forcible felony of domestic assault.  We disagree.

In a claim of ineffective assistance of counsel, the movant must show that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under the same or similar circumstances, and that counsel's deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  To establish the performance prong, Warren must "overcome a strong

4

presumption that [his] counsel provided competent assistance." *Deck v. State*, 68 S.W.3d 418, 425 (Mo. banc 2002). Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Warren must satisfy both the performance and the prejudice prong of *Strickland* in order to prevail on a claim of ineffective assistance of counsel. "If the movant fails to satisfy either the performance prong or the prejudice prong, we need not consider the other." *Hendricks v. State*, 663 S.W.3d 875, 881 (Mo. App. E.D. 2023) (internal quotation omitted).

In this case, Warren failed to establish prejudice. He claims that Counsel should have, in addition to offering an instruction regarding reasonable fear of death or serious physical injury as justification for his use of deadly force, additionally offered the instruction regarding justification of the use of deadly force due to a reasonable fear of a "forcible felony." Section 563.031.2 provides:

> 2. A person shall not use deadly force upon another person under the circumstances specified in subsection 1 of this section unless:
>
> (1) He or she reasonably believes that such deadly force is necessary to protect himself, or herself or her unborn child, or another against death, serious physical injury, or any forcible felony[.]

The self-defense instruction offered at trial, Instruction No.7, as read to the jury by the trial court, is as follows:

> One of the issues in this case is whether the use of physical force by the Defendant against [Victim] was lawful. On the issue of self-defense in this case, you are instructed as follows: In this state, the use of physical force, including the use of deadly force to defend oneself is lawful in

5

certain situations. **However, an initial aggressor is not justified in using physical force to defend himself from the counter-attack that he provoked.** And a person is not justified in using physical force to defend himself if he was committing domestic assault in the third degree.

In order for a person to lawfully use nondeadly force in self-defense, he must reasonably believe such physical force is necessary to defend himself from what he reasonably believes to be the use of imminent use of unlawful force, and he can only use physical force to the extent that he reasonably believes is necessary to defend himself, but a person is not permitted to use deadly force unless he reasonably believes that the use of deadly force is necessary to protect himself against death or serious physical injury.

A person is not required to retreat before resorting to the use of physical force to defend himself if he is lawfully remaining in a residence. The State has the burden of proving beyond a reasonable doubt that the Defendant did not act in lawful self-defense. Unless you find beyond a reasonable doubt that the Defendant did not act in lawful self-defense, you must find the Defendant not guilty.

As used in this instruction, an initial aggressor is a one [sic] who first attacks or threatens to attack another.

As used in this instruction, the term reasonable believe [sic], means a belief based upon reasonable grounds; that is, grounds that could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appear. It does not depend upon whether the belief turned out to be true or false.

As used in this instruction, deadly force means physical force which is used with the purpose of causing or which a person knows to create a substantial risk of causing death or serious physical injury. As used in this instruction, the term serious physical injury means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

As used in this instruction, the term domestic assault in the third degree means the Defendant knowingly caused physical pain to a victim, that the victim and the Defendant had been in a continuing social relationship of a romantic or intimate nature, and that Defendant knew that the victim and Defendant had been in a continuing social relationship of a romantic or intimate nature.

Evidentiary matters: Evidence has been introduced of the reputation of the Defendant for violent and turbulent [sic] you may consider this evidence in determining who was the initial aggressor in the encounter and for no other purpose. You, however, should consider all of the evidence in the case in determining whether the Defendant acted in lawful self-defense. (emphasis added).

While, as Warren points out, the instruction did not include as a possible justification for the use of deadly force a reasonable belief that such force was necessary for Warren to protect himself against the "forcible felony" of domestic assault, it did provide as a possible justification the reasonable belief that Warren needed to use deadly force to protect himself against death or serious physical injury, and Warren testified extensively about his previous brain hemorrhage and about how he was being hit in the head by Son and Victim at the same time.

More importantly, there was ample evidence presented that Warren was the initial aggressor or that he was committing domestic assault. Warren came into the home agitated over an unrelated incident that had just occurred with a much larger man whom Warren had been unable to "budge." In fact, Warren was so agitated that he punched two holes in the walls of Girlfriend's house when he arrived home. Multiple witnesses testified that Warren had been drinking, and when Girlfriend told Warren to stop putting holes in her walls, he admittedly told her to "shut the F up" and called her a bitch. Girlfriend and Victim both unequivocally testified that Warren hit her in the face before anyone hit Warren. Son testified that Warren either hit Girlfriend or threatened to hit her, and another friend at the house testified that Warren pushed Girlfriend and threatened her. Although the witnesses' testimonies varied slightly, we view the evidence in the light most favorable to the jury's verdict, and the jury could have and apparently did find that Warren was the initial aggressor or that he had committed domestic assault and therefore was not entitled to use deadly force to defend himself. Under these facts it does

not matter which instruction regarding justification for the use of deadly force Warren may have submitted, because the jury determined he was the initial aggressor. Warren shows no prejudice from Counsel's failure to add as a possible justification to Instruction No. 7 Warren's reasonable belief that deadly force was necessary to protect himself from a forcible felony. Because Warren fails to show prejudice, it was not clear error for the motion court to deny his motion for post-conviction relief on the basis of ineffective assistance of counsel. *Hendricks*, 663 S.W.3d at 881.

## Conclusion

For the above-stated reasons, we affirm the judgment of the motion court.

_____
Gary D. Witt, Chief Judge, Presiding

All concur

8